**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
ALEXIS WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:(619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATONYA SIMMS, on behalf of herself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIMPLY FASHION STORES LTD., a Alabama company,<br><br>Defendant. | Case No.:  **'13CV1717 DMS RBB**<br><br>CLASS ACTION<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227** *et seq.*<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. Latonya Simms ("Plaintiff" or "Plaintiff Simms") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Simply Fashion Stores, Ltd. ("Defendant" or "Simply Fashion"), in negligently, and/or willfully contacting Plaintiff through SMS or "text" messages on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*, ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## JURISDICTION AND VENUE

2. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff seeks up to $1,500 in damages for each text message in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A). Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

3. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the TCPA, a federal statute.

4. Venue is proper in the United States District Court for the Southern District of California pursuant to 18 U.S.C. § 1391(b) and 1441(a) because Defendant is deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendant's contacts with this District, including and not limited to through simplyfashion.com, are sufficient to subject it to personal jurisdiction.

## PARTIES

5. Plaintiff Simms is, and at all times mentioned herein was, a resident of the State of Louisiana. She is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153 (32).

6. Plaintiff is informed and believes, and thereon alleges, that Defendant Simply Fashions is, and at all times mentioned herein was, a Alabama company, whose primary corporate offices are located in Birmingham Alabama, and is a "person," as defined by 47 U.S.C § 153 (32).

7. Defendant is engaged in the business of selling women's clothing and fashion items throughout the United States at its 300 retail store locations, including and not limited to through SimplyFashion.com.

8. Plaintiff alleges that at all times relevant herein Defendant conducted business in the state of California and in the County of San Diego, and within this judicial district.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## (TCPA), 47 U.S.C. §§ 227 *et seq.*

9. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

10. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

number in the absence of an emergency or the prior express consent of the called party.[2]

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

12. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[4] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[5]

## FACTUAL ALLEGATIONS

13. One of the newest types of bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" is a

---

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

14. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS or "text" message call is successfully made, the recipient's cell phone rings or otherwise notes the receipt of the text message, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

15. Unlike more conventional advertisements, such text messages actually costs their recipients money, because cell phone users must frequently pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

16. Over the course of an extended period beginning no later than March of 2013, Defendant and its agents directed the mass transmission of text messages to cell phones nationwide.

17. Beginning in March of 2013 and continuing to the present time, Plaintiff Simms received numerous text messages from Defendant regarding sales and other promotions at its retail stores.

18. Specifically, on March 1, 2013, Plaintiff Simms received the following text messages from SMS code 699-79:

> "Simply Fashion's ADDITIONAL 50% off ALL red tags sale has been extended just for Fashionistas! Come see us to get select styles for only $3-$5 while it lasts!"

/ / /

19. Plaintiff Simms continued to receive similar text messages promoting Defendant's business on March 15, 2013, March 22, 2013, March 28, 2013, April 1, 2013, April 5, 2013 and May 3, 2013, from the same SMS code 699-79, which did not provide a method for opt-out.

20. On May 9, 2013, Plaintiff Simms received the following text message from SMS code 699-79 with an opt-out method:

> "(Simply Fashion) BOGO 50% off ALL dresses until Mother's Day! Celebrate your Mom in style. See store for details. FWD to a friend! Reply STOP to be removed."

21. Thus, on May 9, 2013, Plaintiff Simms specifically instructed Defendant to no longer contact her by responding "STOP" to Defendant's text message.

22. On May 9, 2013, Defendant acknowledged receipt of that text message by the following text message from SMS code 699-79:

> "You have been unsubscribed from future ExactTarget SMS Alerts." Plaintiff Simms then continued to receive further text messages about Defendant's sales despite its acknowledgement that Plaintiff did not wish to be contacted on her cellular telephone."

23. Despite confirmation that Plaintiff Simms had "unsubscribed", on May 17, 2013, Plaintiff Simms received the following text message from SMS code 699-79:

> "(Simply Fashion) Save 50% - 75% off the original prices of ALL clearance items. Hurry in while we still have your size! FWD to a friend to help them save, too!"

24. Thus, on May 17, 2013, Plaintiff once again replied "STOP" to Defendant's text messages.

///

25. Once again Defendant acknowledged receipt of that message by the following text message on May 17, 2013, from SMS code 699-79:

> "You have been unsubscribed from future ExactTarget SMS Alerts. Reply HELP for help. Msg&data rates may apply."

26. However, again despite confirmation that Plaintiff Simms had "unsubscribed", on June 6, 2013, Plaintiff Simms received the following text message from SMS code 699-79:

> "(Simply Fashion) 25% off ALL red tag items NOW until Sunday! Take an additional 25% off red tags just in time for summer! FWD to a friend so they can save too!"

27. Plaintiff Simms continued to receive similar text messages promoting Defendant's business on June 21, 2013, July 2, 2013, July 5, 2013 and July 19, 2013.

28. Despite Plaintiff Simms' efforts to inform Defendant that she did not wish to be contacted, Defendant still sends unsolicited text messages on a regular basis.

29. These unsolicited text messages sent to Plaintiff Simms' cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1), is prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to store or produce numbers randomly or sequentially, and to dial such numbers, to place telephone calls and/or SMS or text messages to Plaintiff's cellular telephone.

30. The telephone number that Defendant, or its agents, sent the text messages to were assigned to cellular telephone services for which Plaintiff incurred a charge for incoming calls or text messages pursuant to 47 U.S.C. § 227(b)(1).

/ / /

31. These telephone text messages constituted "calls" under the TCPA that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

32. Plaintiff Simms did not provide Defendant or its agents prior express consent to receive unsolicited text messages pursuant to 47 U.S.C. § 227 (b)(1)(A).

33. These telephone confirmatory text messages by Defendant or its agents violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated ("the Class").

35. Plaintiff represents, and is a member of the Class consisting of all persons within the United States who received any unsolicited SMS or text messages from Defendant or its agents on their paging service, cellular phone service, mobile radio service, radio common carrier service, or other service for which they were charged for the SMS or text messages, through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(B)(1)(A)(3) or artificial or prerecorded voice, which SMS or text messages by Defendant or its agents were not made for emergency purposes or with the recipients' prior express consent, within the four years prior to the filing of this Complaint.

36. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

37. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through their agents, illegally contacted Plaintiff and the Class members via their cellular telephones by using unsolicited SMS or text messages, thereby causing Plaintiff

and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of said Plaintiff and the Class members. Plaintiff and the Class members were damaged thereby.

38. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

39. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The Class can be identified through Defendant's records or Defendant's agents' records.

40. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

    a. Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent SMS or text messages without the recipients' prior express consent (other than SMS or text messages made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing to any telephone number assigned to a cellular telephone service;

    b. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

<pre>
</pre>

   c. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

41. As persons who received at least one unsolicited SMS or text message without Plaintiff's prior express consent, Plaintiff is asserting a claim that is typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

42. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to individually seek legal redress for the wrongs complained of herein.

43. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

44. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

/ / /

# FIRST CAUSE OF ACTION

## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. §§ 227 *ET SEQ.*

45. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

46. Each SMS or text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention. These text messages were made en masse through the use of a short code and without the prior express consent of the Plaintiff and the other members of the Class to receive such text messages.

47. The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq*.

48. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. §§ 227 *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

49. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

/ / /

/ / /

/ / /

/ / /

## SECOND CAUSE OF ACTION
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. §§ 227 *ET SEQ.*

50. Plaintiff incorporates by reference the above paragraphs 1 through 44 inclusive, of this Complaint as though fully stated herein.

51. Each SMS or text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention. These text messages were made en masse through the use of a short code and without the prior express consent of the Plaintiff and the other members of the Class to receive such text messages.

52. The foregoing acts and omissions of Defendant constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq*.

53. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §§ 227 *et seq.*, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

54. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### PRAYER FOR RELIEF

**Wherefore**, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

**FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ*.**

55. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

56. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

57. Any other relief the Court may deem just and proper.

**SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ*.**

58. As a result of Defendant's, and Defendant's agents' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

59. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

60. Any other relief the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 23, 2013      */s/ Ronald A. Marron*
By: Ronald A. Marron
**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON
SKYE RESENDES

ALEXIS WOOD
KAS GALLUCCI
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665